Morton, Appellant, *v.* Washington National Insurance Company.

Argued April 27, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Harry R. Levy*, of *Kaufman & Levy*, for appellant.

*Robert R. Wertz*, with him *Weller, Wicks & Wallace*, for appellee,

OPINION BY JAMES, J., September 28, 1944:

This is an appeal from a judgment n. o. v. entered for the defendant insurance company in a suit by the beneficiary of a life insurance policy. The question raised involves the construction of a disability benefit provision in a life insurance policy delivered to the deceased husband of the appellant beneficiary. The clause reads as follows: "If, while this Policy is in full force and effect and while there is no default in the payment of premium beyond the four weeks' grace period, the insured shall ...... lose permanently the sight of both eyes, total and permanent disability will be deemed to exist, and one-half of the amount of insurance then payable in the event of death shall be paid immediately upon receipt by the Company of due proof of such loss and surrender of this policy. Thereafter no further premiums will be required and the Company will issue a free or paid-up Policy providing for payment at the death of the Insured, or at maturity as an endowment, of such benefit as would have been payable under the original Policy."

The policy was issued March 2, 1936 and the last premium was paid on October 11, 1937, more than three years before the insured's death on December 2, 1940. Since the policy contained a lapse proviso which terminated the coverage within the grace period after the last premium (unless premiums had been paid for three years or more), appellant must rely upon the disability benefits to sustain her cause of action. She alleges that sometime before the policy lapsed, the insured had totally and permanently lost his sight, and that consequently he was entitled *then* to a paid-up policy in the face amount of the original. On May 20, 1940, a written demand was made on the insurance company for payment of one-half of the face value of the policy and for the paid-up policy, and the policy was surrendered at or about the date of insured's death.

Not until June 2, 1941, were formal proofs of disability filed on behalf of the insured. The present suit was for the face amount of the original policy.

The decisions of this state uniformly held that the furnishing of proof of an existing disability is a condition precedent to the waiver of premiums or the accrual of other benefits when an insurance policy provides that proof of disability must be furnished to the company: *Courson v. N. Y. Life Ins. Co.*, 295 Pa. 518, 145 A. 530; *Brams v. N. Y. Life Ins. Co.*, 299 Pa. 11, 148 A. 855; *Perlman v. N. Y. Life Ins. Co.*, 105 Pa. Superior Ct. 413, 161 A. 752; *Lucas v. J. Hancock Mut. Life Ins. Co.*, 116 Pa. Superior Ct. 298, 176 A. 514; *Lyford v. New England Mut. Life Ins. Co.*, 122 Pa. Superior Ct. 16, 184 A. 469; *Jenkins v. Mutual Life Ins. Co.*, 130 Pa. Superior Ct. 442, 198 A. 486; *Buntz v. General Amer. Life Ins. Co.*, 136 Pa. Superior Ct. 284, 7 A. (2d) 93; *Farmers Trust Co., v. Reliance Life Ins. Co.*, 140 Pa. Superior Ct. 115, 13 A. (2d) 111. In these cited cases only the furnishing of proof was required, while the clause in the instant policy requires not only "due proof of such loss" but also "the surrender of the policy." Neither of these requirements were complied with during the life of the policy.

"The clause, making the furnishing of due proof of total and permanent disability a condition precedent to liability, is a proper, reasonable and salutary one to prevent fraud and deception being practiced on the insurer ...... Without it the company might be called on to pay claims four years old as in the Lucas case, or even twenty-five years old, as suggested in Wick v. Western Union Life Ins. Co., 104 Wash. 129, 175 Pac. 953, at a time when it had become impossible to test the truth and justice of the claim; although, as here, the failure to present proof of disability sooner was not due to the insured's insanity or other cause *preventing* his acting, but because of his *failure* to act,

from ignorance, negligence or other cause within his own control." *Lyford v. Insurance Co.,* supra at 29. Even insanity or the physical disability of the insured will not excuse the failure to furnish proofs: *Farmers Tr. Co., v. Reliance Life Ins. Co.,* supra. Thus as to the amount which would have been immediately payable to the insured, due proof while the policy was still in full force was quite clearly a condition precedent to the waiver of premium payments. The entire sentence must be read as one. Even as the disability must occur before default, so must proof of the disability be given to the company before the lapse of the insurance. Otherwise, the policy would remain without a time limit within which proofs of disability have to be filed. It seems rather plain from the terms of the clause that premiums should have been paid until proof was given and the certificate was surrendered. The unfairness of any other construction is best shown by the fact that plaintiff's claim is based on an alleged disability of her husband that had existed nearly three years prior to the notice demanding payment under the provisions of the policy.

Appellant argues that the phrase *"thereafter* no further premiums will be required" refers to the time when total and permanent disability occurred, and since the policy was in force at that time the further payment of premiums was excused regardless of when due proof was given. While ambiguous language should be construed to favor the insured, *Brams v. N. Y. Life Ins. Co.,* supra; *Gold v. Commercial Ins. Co.,* 124 Pa. Superior Ct. 181, 188 A. 360, the court ought not to create a doubt where none exists in order to decide against the insurer. Obviously appellant's interpretation, instead of considering the disability clause as a whole, severs one phrase from another to reach the conclusion that while the payment of one-half the amount of insurance is contingent on the filing of proofs, the

other benefit vests immediately. A natural reading of the clause will reveal that "thereafter" relates to the giving of proof and a surrender of the policy, which are declared to be prerequisites to the issuance of a paid-up policy.

A few cases support appellant's contention: *Shapiro v. Metropolitan Life Ins. Co.*, 272 N. Y. Supp. 401; *Minnesota Mut. Life Ins. Co., v. Marshall*, 29 F. (2d) 977; *Herschman v. John Hancock Mut. Life Ins. Co.*, 284 N. Y. Supp. 561; *Sovereign Camp, W. O. W. v. Meek*. 47 S. W. (2d) 567. Immediately following the case of *Herschman v. John Hancock Mutual Life Ins. Co.*, supra, on page 565, is reported the case of *Mutchnich v. John Hancock Mut. Life Ins. Co.*, 284 N. Y. Supp. 565, which discusses the other cases above mentioned and holds directly contrary to these cited cases. Suffice it for us to say the cases cited by appellant are not in harmony with the rulings of our own appellate courts.

Undoubtedly we are placing on the insured the burden of paying the premiums and keeping the policy in full force until due proof has been furnished that the loss of eyesight was permanent. A contrary result would either require the insurance company to continuously watch the physical condition of thousands of policy holders, or subject it to the contingency of becoming liable to a person whose policy it has long considered terminated. With the facts peculiarly within the knowledge of the insured, he should be the party to ascertain the existence of total and permanent disability.

Since the appellant claims as the beneficiary of her husband her case is no better than his, and the judgment must be affirmed.